## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ENDANG WIDURI TIMOSCHUK, Individually, and as the Surviving Spouse and Representative of THE ESTATE OF JEFFORY ALAN TIMOSCHUK, Deceased, and on Behalf of Infant A.R.T. | § § § § § § | |
| | § | Civil Action No.  SA-12-CV-816-XR |
| *Plaintiffs,* | § § | |
| v. | § § | |
| DAIMLER TRUCKS NORTH AMERICA, LLC d/b/a FREIGHTLINER LLC, SCHNEIDER NATIONAL LEASING, INC., VOGES DRILLING CO., and ANDREW MORGAN WEATHERS, | § § § § § § | |
| *Defendants.* | § | |

### ORDER

On this date, the Court considered Defendant Daimler Trucks North America LLC's ("Daimler") motions to exclude or limit Plaintiffs' expert testimony.   Daimler has filed a *Daubert* motion to exclude the testimony of Gerald Rosenbluth, Plaintiffs' proffered expert on truck cab design.  Doc. No.  85.  After careful consideration, that motion is DENIED.   In addition, Daimler seeks to limit the testimony of David Smith, Plaintiffs' fire causation and spread expert, and Dr. Mary Case, Plaintiffs' medical expert.  Doc. No. 80 & Doc. No. 84. These motions are also DENIED.

### BACKGROUND

This case arises out of a tractor trailer accident that killed Jeffory Timoschuk. Plaintiff Endang Widuri Timoschuk, individually, as the surviving spouse and representative

1

of the estate of Jeffory Alan Timoschuk, and on behalf of Infant A.R.T., (collectively "Plaintiffs") sued Daimler and three other defendants.  Doc. No. 20.  Plaintiffs have settled with all Defendants except Daimler.  Doc. No. 58 at 2.

Plaintiffs allege that on October 15, 2010, Jeffory Alan Timoschuk was a passenger in a 2007 Daimler tractor with his co-driver, James W. Meyer.  Timoschuk's and Meyer's tractor struck a drill rig truck and caught fire.  Both Timoschuk and Meyer perished in the fire.  Timoschuk was allegedly alive in the moments immediately following collision.  However, Timoschuk was apparently trapped in the burning tractor, which was not equipped with an emergency exit.  On August 31, 2012, Plaintiffs filed the present wrongful death and survival lawsuit, asserting causes of action against Daimler for negligence, defective design, failure to warn, and breach of warranty.  On May 7, 2014, Daimler filed these *Daubert* motions to exclude Plaintiffs' expert testimony.  Docs. Nos. 80, 84, & 85.

## LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702.   As a preliminary matter, the Court must determine whether the proffered witness qualifies as an expert.  "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702).

If the expert is qualified, then the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) provides the analytical framework for determining

the admissibility of expert testimony.   *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards.  *Id.* at 589.   This entails ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Id.* at 597; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("In short, expert testimony is admissible only if it is both relevant and reliable").

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue.  *Id.*  at 592-593.   In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing whether the methodology upon which an expert rests his opinion is reliable.   These factors are: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.*  at 593–94; *Burleson v. Tex. Dep't of Criminal Justice,* 393 F.3d 577, 584 (5th Cir. 2004).

The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Id.*  "[I]n determining the admissibility of expert testimony, the district court should approach its task 'with proper deference to the jury's role as the arbiter of disputes between conflicting

opinions." *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

## DISCUSSION

### 1. *Motion to Exclude Expert Testimony from Gerald Rosenbluth*

Daimler seeks to exclude all testimony from Gerald Rosenbluth, Plaintiffs' expert on alleged design defects in the subject trailer.  Doc. No. 85.  Daimler first argues that Mr. Rosenbluth is not qualified to testify as an expert on truck design.  *Id.*  Second, Daimler asserts that, even if Rosenbluth is qualified, his opinion in this case rests on an unreliable foundation and should be excluded.  *Id.*

To begin, the Court finds that Rosenbluth is qualified as an expert to testify on truck design and safety.   Based upon his curriculum vitae, Rosenbluth has over 50 years of experience in the automotive design and safety field.  Doc. No. 94, Ex. B.   He is the President of Automotive Consulting Services Inc., and has served as a consultant to numerous government agencies, including the National Highway Traffic Safety Administration. Rosenbluth has B.A. and M.A. degrees from Arizona State University with a specific focus on Industrial Design and Technology and Automotive Design.  *Id.*  He is a member of the Society of Automotive Engineers, among other professional affiliations pertaining to the automobile industry. [1] *Id.*

In addition to painting Rosenbluth as a professional expert witness, the main thrust of Daimler's argument is that any experience in the automotive industry that  Rosenbluth      may

---

[1] Daimler is correct that, just because Rosenbluth has been found qualified as an expert witness in other courts does not mean that this Court can automatically assume that he is qualified.  However, the fact that Rosenbluth routinely testifies on auto safety matters at least suggests that he is indeed a sought-after expert in this field.

have does not qualify him to testify about the subject of this litigation: heavy truck design. Doc. No. 85.  To the extent that Daimler seeks to have Rosenbluth excluded because his expertise is not solely focused on truck design, but automotive safety more generally, it is worth noting  as an initial matter that courts routinely reject efforts to artificially narrow the scope of a witnesses' expertise in order to disqualify him or her.  *See, e.g., Johnson v. BAE Sys. Land & Armaments, L.P.*, 3:12-CV-1790-D, 2014 WL 1714487 (N.D. Tex. Apr. 30, 2014) (rejecting attempt to disqualify clinical psychologist who specialized in hate crimes from testifying on emotional impact in a Title VII case).

More specifically, Daimler contends that Rosenbluth is not qualified to testify because he has never designed "sleeper doors, pop-out windows or any other form of egress from a heavy truck." Doc. No. 85 at 9.  Daimler's argument here is that to be qualified as an expert on this issue, a witness must have designed emergency exits for heavy trucks.  Not only does this understanding narrow the scope of potential experts, it also mischaracterizes the relevant inquiry.   Plaintiffs are not claiming that any emergency exits were defectively designed; instead, they assert that the truck design itself was defective because it lacked sufficient emergency exits.  This is an important distinction.  As Daimler correctly notes in its motion for summary judgment, "[t]he defect question hinges on whether the 'condition of the tractor' rendered it unreasonably dangerous as designed *as a whole*." Doc. No. 82 (citing *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1045 (5th Cir. 2011) (emphasis in original).  Because the inquiry is focused on the design of the tractor trailer, and not on the exits themselves, there is no merit in the argument that Rosenbluth's lack of particularized experience with emergency exits renders him unqualified.

In this case, the Court finds, based on his education and professional experience, Rosenbluth is qualified to testify as to automobile design and safety, both relevant issues in a design defect case.  The fact that Rosenbluth's experience may not be solely focused on heavy trucks or sleeper cabs does not alter his qualification to testify as to auto safety more generally.  *See Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) ("Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.").

Next, Daimler contends that Rosenbluth's proposed testimony in this case is based on an unreliable foundation and should therefore be excluded.  Doc. No. 85.   Although Rosenbluth's affidavit and expert report establishes that he relied on various studies and physical testing to arrive at his conclusions, Rule 702 requires courts to assess the reliability of the underlying data used to formulate the opinion.  *See Allen v. Pennsylvania Engineering Corp.*, 102. F.3d 194, 199 (5th Cir. 1996) ("[I]f the foundational data underlying opinion testimony are unreliable, an expert will not be permitted to base an opinion on that data because any opinion from that data is likewise unreliable.").   Rosenbluth relies on, *inter alia,* studies from NHTSA and from the University of Michigan Transportation Research Institute regarding incidences of fatalities among operators and passengers of heavy trucks.  Doc. No. 94, Ex. D.   These reports also specifically detail the prevalence of fire incidents in heavy truck accidents.  *Id.*   In addition, Rosenbluth basis his opinions of data on fatalities specific to Freightliner (Daimler) trucks.  *Id.* at Ex. H.

Other than noting in a footnote that these studies are a bit dated, Daimler does not directly challenge these studies, both from reputable institutions.  Consequently, the Court finds that they form an adequate basis from which Rosenbluth could arrive at his conclusion

that the risk of fire makes sleeper cabs without emergency exits unreasonably dangerous. Daimler contends that these studies are immaterial to the question of whether the design was defective because they only "demonstrate a known fact – that heavy trucks experience fires on rare occasions." Doc. No. 100 at 5.  This argument lacks merit.  To recover for defective design under Texas law, a Plaintiff must show: "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009).  The studies relied upon by Rosenbluth provide the underlying data from which Rosenbluth could formulate his opinion on the "unreasonably dangerous" element of a defective design claim.[2]  Stated differently, the ultimate conclusion that a design is defective necessarily requires a series of intermediate conclusions involving the whether the product is dangerous as currently designed.

With respect to his opinion on the causation element that Timoschuk would have been able to escape from an additional exit, Rosenbluth conducted surrogate testing on a mock-up truck using an individual of similar age and build to Timoschuk in order to simulate whether an additional exit would have enabled Timoschuk to escape. Doc. No. 94, Ex. C.  Although the reliability of this form of testing might be questioned on the grounds that the subject individual was not just involved in a large crash (as was Timoschuk), and thus may not have had the same physiological and/or psychological impairments, Rosenbluth also relies on eye-witness testimony indicating that Timoschuk was alive and trying to escape before he perished.  *Id.* at Ex. A.  All factors considered, Rosenbluth has a sufficient foundation on

---

[2] Consider that if Plaintiffs did not produce evidence that the sleeper cab was unreasonably dangerous – an opinion which requires analyzing the risk of fire – Daimler would be entitled to summary judgment on the defective design claim.  Thus, in this motion, Daimler is essentially criticizing Plaintiffs' expert for relying on evidence necessary to establish an element of Plaintiff's cause of action.

which to base his opinion that the design was defective because it lacked an additional sleeper-cab emergency exit.

Daimler further asserts that Rosenbluth's testimony is unreliable because he did not conduct an appropriate risk-utility analysis. Doc. No. 85. Under Texas law, whether a design is unreasonable dangerous involves a consideration of the following five factors:

> 1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use; (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; (5) the expectations of the ordinary consumer

*Goodner,* 650 F.3d at 1045 (citing *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 256 (Tex. 1999)). Daimler takes Rosenbluth's report to task, outlining in great detail the flaws it sees in his analysis. *See* Doc. No. 85 at 7-22. But in so doing, Daimler has implicitly undermined its central argument that Rosenbluth has not even conducted the analysis to begin with. Daimler argues that Rosenbluth is overstating the risks because he admits that truck fires are rare. Doc. No. 85. Daimler further contends that Rosenbluth underestimates the costs associated with his proposal and ignores potential drawbacks from adding a new exit including additional weight, security concerns, and leakage issues. *Id.* Finally, Daimler argues that Rosenbluth's alternate solution of requiring carriers to "opt-out" of an additional emergency exit is illogical, unworkable, and betrays Rosenbluth's lack of understanding of how the industry operates. *Id.*

8

All of these criticisms get to the quality of Rosenbluth's risk-utility analysis, not whether he has conducted such an analysis in the first place.  Thus, the flaws that Daimler has identified are more appropriately the subject of vigorous cross-examination as opposed to the grounds for a *Daubert* motion.  *See Pipitone*, 288 F.3d 239 at 250 (Finding that, under *Daubert*, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  The Court has reviewed Rosenbluth's export report and finds that, without taking a position on his conclusions, he has sufficiently considered the risks and benefits of his proposed solution such that his testimony should not be excluded. *See Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (proponent of expert testimony need not prove that opinions are correct).

This does not end the inquiry because the Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997).   Rosenbluth's testimony may properly be excluded if there is "too great an analytical gap between the data and the opinion proffered." *Id.*; *Moore,* 151 F.3d at 276.  The undisputed fact that some sleeper cabs come with emergency exits indicates that installing such is not an insurmountable burden on the manufacturer that changes the nature of the product.  If Daimler and other manufacturers are offering these kinds of emergency exits as optional equipment, then it is difficult to argue that the opinion that they should be standard equipment is an entirely baseless conclusion that must be kept from the jury.  Accordingly, Rosenbluth will be permitted to testify at trial, and the motion to exclude is DENIED.  Doc. No. 85.

2. *Motion to Limit Expert Testimony from David Smith*

Daimler seeks to limit the testimony of David Smith, Plaintiff's expert on fire causation and spread. Doc. No. 80. As an initial matter, Daimler does not challenge that Smith is qualified as an expert to testify on fire cause and spread. Instead, Daimler argues that Smith should not be permitted to offer his opinion that Timoschuk could have or would have escaped through an additional emergency exit. *Id.* at 3. Specifically, Daimler contends that Smith is neither a medical doctor nor a behavioral expert and is therefore not qualified to offer his opinion on what Timoschuk is likely to have done in response to the fire. *Id.* at 4.

Although there is some merit to the contention that Smith, as a fire causation and spread expert, is not qualified to testify as to Timoschuk's physical capabilities, the precise delineations of what opinions Smith can offer are more appropriately the subject of a motion in *limine* and/or an objection at trial. By conceding that Smith is qualified as a fire spread expert, Daimler also necessarily concedes that Smith may offer his opinion as to what impact fire and/or smoke would have had on Timoschuk's ability to exit the cab, either through the existing exits or through a hypothetical additional emergency exit. At the same time, testimony opining that Timoschuk would have necessarily done so is not reliable given Smith's expertise. Stated differently, while Smith's opinion that Timoschuk *would* have exited through an additional emergency exit may raise concerns, his opinion that Timoschuk *could* have so exited the truck based upon his understanding of how the fire spread is entirely within his realm of expertise.[3] As long as Smith's testimony is tethered to his analysis of the

---

[3] Because the appropriateness of Smith's opinion testimony relies, in large measure, on how the questions and answers are phrased, the Court reiterates that it will take up these objections at trial.

spread of the fire in the cab, his testimony is reliable such that a *Daubert* motion would be improvident.   As a result, the motion is DENIED.  Doc. No. 80.

> 3.   *Motion to Limit Expert Testimony from Mary Case, M.D.*

Daimler also seeks to exclude certain testimony from Mary Case, M.D., a pathologist and Plaintiffs' medical expert.  Doc. No. 84.   Daimler does not argue that Dr. Case is unqualified to testify as an expert regarding Timoschuk's "cause of death, medical condition or physical abilities during the relevant time period." *Id.* at 4.  Instead, Daimler contends that any testimony offered by Dr. Case "regarding Timoschuk's thought processes or the choices he might have made," should be excluded because it lacks reliable support. *Id.* at 6 (emphasis omitted).

Daimler's *Daubert* motion is extremely narrow.  As with Smith, the precise boundaries of what Dr. Case can opine on are more appropriately determined through a motion in *limine* or an objection at trial.   Daimler seeks to prevent Dr. Case from testifying that Timoschuk *would* have exited the cab through an additional emergency exit in the sleeper cab.  However, based upon its own concessions regarding Dr. Case's expertise, Daimler has offered no basis to exclude any opinion testimony regarding what Timoschuk *could* have been physically capable of under the circumstances.  In fact, Daimler concedes that such testimony from Dr. Case would be appropriate.  Doc. No. 84.  Thus, the admissibility of Dr. Case's testimony depends on how the questions and answers are phrased.   Accordingly, the *Daubert* motion is DENIED.  Doc. No. 84.

**CONCLUSION**

In light of the foregoing analysis, all of Daimler's *Daubert* motions are DENIED. Docs. Nos. 80, 84, & 85.


SIGNED this 4th day of June, 2014.

 

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE